## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JOSEPHINE J. STONE,      )
                        )
       Plaintiff,      )
                        )
     vs.            )     **Case No. 4:14CV494 ACL**
                        )
CAROLYN W. COLVIN,     )
Acting Commissioner of Social Security,  )
                        )
       Defendant.     )

## MEMORANDUM

This is an action under 42 U.S.C. § 405(g) for judicial review of Defendant's final decision denying the application of Josephine J. Stone for Supplemental Security Income under Title XVI of the Social Security Act.   This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties.   See 28 U.S.C. § 636(c).   Plaintiff filed a Brief in support of the Complaint.   (Doc. 18.) Defendant filed a Brief in Support of the Answer (Doc. 24), to which Plaintiff has filed a Reply (Doc. 26.)

## Procedural History

On April 19, 2011, Plaintiff filed an application for Supplemental Security Income, claiming that she became unable to work due to her disabling condition on March 1, 2007.[1]   (Tr. 139-46.)   Plaintiff's claim was denied initially.   Following an administrative hearing, Plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated November 16, 2012.   (Tr. 80, 7-25.)   Plaintiff then filed a request for review of the ALJ's decision with the

---

[1]At the administrative hearing, Plaintiff amended her alleged onset of disability date to March 25, 2011.   (Tr. 35.)

Appeals Council of the Social Security Administration (SSA), which was denied on February 4, 2014. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A. ALJ Hearing

Plaintiff's administrative hearing was held on November 6, 2012. (Tr. 34.) Plaintiff was present and was represented by counsel. (Id.) Also present was vocational expert Michael J. Wiseman. (Id.)

Plaintiff's attorney indicated that Plaintiff was amending her alleged onset date to March 25, 2011. (Tr. 35.) Plaintiff's attorney argued that Plaintiff is disabled based upon grid rule 201.09. (Tr. 36.) Plaintiff's attorney stated that Plaintiff has the following impairments that reduce her functioning to sedentary work: bilateral hand and wrist degenerative joint disease, degenerative arthritis in both knees, and an arthritic left ankle. (Tr. 37.)

The ALJ examined Plaintiff, who testified that she lives with her husband in a mobile home. (Tr. 38.) Plaintiff stated that her husband works in the trailer court. (Id.)

Plaintiff testified that she gave her driver's license up a few years prior to the hearing, because she no longer has a need to drive. (Id.) Plaintiff stated that she was capable of driving short distances. (Tr. 39.) Plaintiff testified that her husband takes her wherever she needs to go. (Id.)

Plaintiff testified that she last worked in 2006, at a housekeeping position. (Tr. 40.) Plaintiff stated that she stopped working, because she was laid off. (Id.)

Plaintiff testified that she is unable to work now due to her wrist problems. (Id.) Plaintiff

stated that she is unable to lift heavy things, walk up and down steps, or push a heavy cart. (Id.)

Plaintiff stated that she has pain in both of her wrists, although her left wrist is worse. (Tr. 41.) Plaintiff testified that her wrist impairment prevents her from doing "everything." (Id.) Plaintiff stated that her husband does the majority of the cooking. (Id.)

Plaintiff testified that she would be unable to perform her past work as a housekeeper due to her wrist pain; she also has difficulty walking up and down steps due to knee pain. (Tr. 43.) Plaintiff testified that her left knee is worse than her right knee. (Id.)

Plaintiff stated that she takes baby aspirin to relieve her pain, although it is not effective. (Tr. 44.) Apparently, Plaintiff's doctor prescribed the baby aspirin for Plaintiff's high blood pressure. (Id.)

Plaintiff stated that she saw Dr. Gary Lamonda on one occasion at the request of her attorney. (Tr. 45.) Plaintiff testified that she has not received much medical treatment, because she did not have insurance. (Id.) Plaintiff stated that she recently started receiving Medicaid benefits. (Id.)

Plaintiff testified that she works on crossword puzzles all day to keep her from "going insane." (Tr. 46.)

Plaintiff testified that she has no side effects from her medications. (Id.)

Plaintiff stated that she smokes half a package of cigarettes a day, and that she has difficulty using a lighter. (Tr. 47.) Plaintiff testified that she drinks four to five cans of beer on the weekend. (Tr. 49.) Plaintiff stated that she used to drink a case of beer a day. (Id.) Plaintiff stated that she has some difficulty opening cans, but she either uses a device to help open the can or asks someone to open it for her. (Id.)

Plaintiff testified that she fractured her left wrist in July of 2012. (Tr. 50.) Plaintiff

stated that she had previously broken her left forearm and left ankle. (Id.)

Plaintiff testified that she is able to lift "maybe" ten pounds. (Tr. 51.) Plaintiff stated that she can stand "maybe" ten minutes. (Tr. 52.) Plaintiff explained that she has to sit down after standing for long periods, because her knee starts shaking; she is unable to walk far because her legs start hurting. (Id.)

Plaintiff's attorney examined Plaintiff, who testified that she has difficulty buttoning buttons, and zipping zippers. (Tr. 53.) Plaintiff stated that she is unable to open jars. (Id.)

Plaintiff testified that her left ankle has been giving out on her for approximately one-and-a-half years. (Id.) Plaintiff stated that she does not have much range of motion in the left ankle. (Id.) Plaintiff testified that she occasionally experiences pain in her left ankle when she stands, and she always has pain when she walks. (Tr. 54.)

The ALJ examined vocational expert Michael J. Wiseman, who testified that Plaintiff's past work as a housekeeper was light and unskilled. (Tr. 56.)

The ALJ asked Mr. Wiseman to assume a hypothetical claimant with Plaintiff's background and the following limitations: lift ten pounds occasionally, and five pounds frequently; stand and walk four hours out of an eight-hour workday, and sixteen minutes at a time; sit five hours out of an eight-hour workday, and three hours at a time; pushing and pulling limited to the same weight as lifting and carrying; frequent handling, fingering, and feeling; occasional climbing, balancing, stooping, kneeling, crouching, and bending; and no exposure to dust, fumes, vibration or cold temperatures. (Tr. 56-57.) Mr. Wiseman testified that the claimant could not perform Plaintiff's past work. (Tr. 57.) Mr. Wiseman stated that the individual could perform "an extremely limited range of light work." (Id.) Mr. Wiseman stated that the light occupational base would be reduced about 95 percent. (Id.) Mr. Wiseman testified that it is not the weight

limitations, but the limitation to no dust or fumes that greatly restricts the available jobs.   (Tr. 58.)

The ALJ stated that Plaintiff is able to smoke cigarettes, so she should be restricted only to no concentrated exposure to fumes, dust, and gases.   (Id.)   Mr. Wiseman testified that the hypothetical claimant could perform the following light positions: arcade attendant (129,775 positions nationally, 680 regionally); parking lot attendant (42,500 nationally, 620 regionally); and ticket taker (110,000 nationally, 475 regionally).   (Id.)   Mr. Wiseman stated that he had reduced the number of positions of the ticket taker job by half to account for the sit/stand option.   (Id.)

Mr. Wiseman testified that he was considering jobs that have sit/stand options at will to fit the ALJ's criteria of standing, walking, and sitting.   (Tr. 59.)   Mr. Wiseman stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") with the exception of the sit/stand option.   (Id.)   Mr. Wiseman explained that the DOT was last revised in 1991 and does not address sit/stand options.   (Id.)   Mr. Wiseman stated that his testimony was based on his own experience placing individuals in the particular jobs he mentioned in the relevant region. (Id.)

The ALJ next asked Mr. Wiseman to assume the same limitations as the first hypothetical, except handling, fingering, and feeling are limited to occasional.   (Tr. 60.)   Mr. Wiseman testified that the ticket taker position would no longer be available but the arcade attendant and parking lot attendant positions would still be available.   (Id.)   Mr. Wiseman stated that these positions have changed radically sine the DOT was written and that the positions would allow for a limitation of occasional handling.   (Id.)   Mr. Wiseman testified that there are no additional positions the hypothetical claimant could perform.   (Tr. 61.)

Plaintiff's attorney then questioned Mr. Wiseman, who testified that the definition of light work according to SSA regulations and the DOT is lifting no more than twenty pounds at a time

and frequently lifting or carrying ten pounds.   (Id.)   Mr. Wiseman testified that he reduced the number of positions available to the hypothetical claimant based on the weight limitations provided in the ALJ's hypothetical.   (Id.)

Upon re-examination by the ALJ, Mr. Wiseman testified that vocational experts are charged with defining light and sedentary work, because the jobs have changed and are performed differently in regional areas.   (Tr. 62.)   Mr. Wiseman stated that the jobs he named are performed within the limitations provided by the ALJ.   (Id.)

**B.     Relevant Medical Records**

Plaintiff presented to John Demorlis, M.D., for a physical at the request of the state Family Support Division on April 28, 2011.   (Tr. 335-38.)   Plaintiff reported a history of ankle sprain, fracture of both wrists, and chronic obstructive pulmonary disease ("COPD").   (Tr. 335.) Plaintiff had smoked three packages of cigarettes a day for forty years, and reported that she had cut down the past year.   (Id.)   Plaintiff also reported that she was an alcoholic.   (Tr. 336.)   Dr. Demorlis noted that Plaintiff moved around easily.   (Tr. 335.)   Upon examination, Plaintiff had full grip strength, was able to do a full squat, could walk on her heels and toes, and had no sensory loss.   (Tr. 337.)   Dr. Demorlis diagnosed Plaintiff with COPD, painful wrist due to traumatic arthritis, post bilateral wrist fractures, bilateral ankle pain, alcoholic, and poor oral hygiene.   (Tr. 338.)   Dr. Demorlis expressed the opinion that Plaintiff was capable of holding a job.   (Id.)

Plaintiff saw Thomas J. Spencer, Psy.D. for a psychological evaluation in connection with her application for Medicaid on May 11, 2011.   (Tr. 342-46.)   Plaintiff described her mood as not very good.   (Tr. 344.)   Plaintiff's affect was agitated, and near tears a couple times; her speech was mildly slurred; and her insight and judgment were poor.   (Id.)   Dr. Spencer diagnosed

Plaintiff with alcohol dependence, cannabis abuse, depressive disorder NOS, and a GAF score[2] of 60-65.[3] (Tr. 346.) Dr. Spencer stated that Plaintiff's depression appeared situational as opposed to depressive disorder. (Id.) He found that Plaintiff's drinking is a greater impediment to employability than her health. (Id.)

Plaintiff presented to the emergency room on September 30, 2011, with complaints of severe pain to the left knee and mild pain to the left ankle after sustaining an injury. (Tr. 360.) Plaintiff underwent x-rays of the left ankle, which revealed an old healed fracture. (Tr. 364.) X-rays of the left knee revealed joint effusion. (Tr. 365.)

Plaintiff presented to the emergency room on January 2, 2012, with complaints of paresthesia and weakness on the left side after falling. (Tr. 398.) Plaintiff underwent a head CT scan, which revealed atrophy without focal abnormality. (Tr. 402.)

Plaintiff saw Gary W. LaMonda, M.D. on February 8, 2012, at the request of her counsel. (Tr. 381.) Plaintiff complained of bilateral wrist pain, painful discolorations of fingers upon exposure to cold temperatures, history of COPD, sprained left ankle, tremors, and nervousness. (Id.) Upon examination, Plaintiff was frail appearing and poorly nourished, but in no distress; had full range of motion of the wrists, but tenderness to extension of the left wrist; crepitus in the

---

[2]The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" which does "not include impairment in functioning due to physical (or environmental) limitations." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th Ed. 1994).

[3]A GAF score of 51 to 60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 32. A GAF score of 61 to 70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

bilateral knees; normal gait and station; mild diffuse muscular atrophy; normal sensation; and normal mood and affect. (Tr. 383.) Dr. LaMonda found that Plaintiff's "major problem" was: bilateral wrist pain, suspected bilateral hand and wrist degenerative joint disease, and prior left wrist fracture with loose body. (Id.) Dr. LaMonda also assessed Raynaud's Phenomenon[4] in the bilateral hands and degenerative arthritis in the bilateral knees. (Id.)

Dr. Lamonda ordered x-rays of Plaintiff's right hand and wrist, which revealed osteoarthritis changes, flexion deformity, suspected osteopenia,[5] and mild degenerative changes of the wrist. (Tr. 377-78.) X-rays of the left hand revealed advanced degenerative changes of the radiocarpal joint and wrist. (Tr. 379).

Dr. Lamonda completed a Medical Source Statement-Physical, in which he expressed the opinion that Plaintiff could frequently lift and carry five pounds, and occasionally lift and carry ten pounds; stand and walk a total of four hours and continuously for sixty minutes; sit a total of five hours and continuously for three hours; push and pull a limited amount; occasionally climb, balance, stoop, kneel, crouch, and bend; handle, finger, and feel a limited amount; and limited exposure to temperatures below forty degrees, dust, fumes, and vibration. (Tr. 374-75.)

Plaintiff presented to the emergency room on July 24, 2012, with complaints of pain in her left wrist after falling when drinking beer. (Tr. 392.) Plaintiff's left wrist was tender on examination, with deformity; and Plaintiff had abrasions on her right forearm and left knee. (Tr. 394.) Plaintiff underwent x-rays of her left wrist, which revealed distal radius and ulnar fractures. (Tr. 394, 396.)

Plaintiff underwent x-rays of the left wrist on August 24, 2012, which revealed improved

_____

[4]Idiopathic paroxysmal bilateral cyanosis of the digits, due to arterial and arteriolar contraction; caused by cold or emotion. Stedman's Medical Dictionary, 1911 (28th Ed. 2006).
[5]Decreased bone density. Stedman's at 1391.

alignment of the distal radial fracture when compared to the July 2012 x-rays.   (Tr. 386.)

## The ALJ's Determination

The ALJ made the following findings:

1.    The claimant has not engaged in substantial gainful activity since March 25, 2011, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments:   history of fracture of the left ankle and degenerative joint disease, joint effusion of the left knee, and degenerative changes of both wrists, left worse than right (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b) except that the claimant can lift ten pounds occasionally and five pounds frequently.   She can stand/walk for sixty minutes at a time for up to four hours in an eight-hour workday and sit for three hours at a time for up to five hours in an eight-hour workday.   She may occasionally handle, finger, and feel.   The claimant can occasionally climb, balance, stoop, kneel, crouch, and bend.   She should have no concentrated exposure to dust/fumes/gases, vibration, or cold temperatures below forty to forty-five degrees.

5.    The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.    The claimant was born on August 20, 1958 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7.    The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since March 25, 2011, the date the application was filed (20 CFR 416.920(g)).

(Tr. 12-20.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on March 25, 2011, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 20.)

## Discussion

A.   **Standard of Review**

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency.   See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).   The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it.   See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).   Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.   See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).   If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.   See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).   The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision.   See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)(citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).   "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary."   Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).   The analysis required has been described as a "searching inquiry."   Id.

**B.**     <u>Determination of Disability</u>

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (I)(1)(a); U.S.C. § 423 (d)(1)(a). The claimant has the burden of proving that s/he has a disabling impairment. <u>See</u> <u>Ingram v. Chater</u>, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); <u>Fines v. Apfel</u>, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920(b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. <u>See</u> 20 C.F.R §§ 404.1520(c), 416.920(c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." <u>Id.</u> Age, education and work experience of a claimant are not considered in making the "severity" determination. <u>See</u> <u>id.</u>

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. <u>See</u> 20 C.F.R. §§ 404.1520 (d), 416.920 (d). The listed impairments are found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be

impaired.   See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).   If it does not, however, the evaluation proceeds to the next step which requires an inquiry into whether the impairment prevents the claimant from performing his or her past work.   See 20 C.F.R. § 404.1520 (e), 416.920 (e).   If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.   See id.   If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience.   See 20 C.F.R. §§ 404.1520 (f), 416.920 (f).   The claimant is entitled to disability benefits only if s/he is not able to perform any other work.   See id.   Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work.   See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   See 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:   activities

of daily living, social functioning, concentration, and persistence or pace.   See

20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges

from no limitation to a level of severity, which is incompatible with the ability to perform

work-related activities.   See id.   Next, the Commissioner must determine the severity of the

impairment based on those ratings.   See 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the

impairment is severe, the Commissioner must determine if it meets or equals a listed mental

disorder.   See 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing

the presence of medical findings and the rating of functional loss against the paragraph A and B

criteria of the Listing of the appropriate mental disorders.   See id.   If there is a severe

impairment, but the impairment does not meet or equal the listings, then the Commissioner must

prepare a residual functional capacity assessment.   See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a

(c)(3).

**C.**      **Plaintiff's Claims**

　　　　Plaintiff argues that the ALJ erred by failing to find that Plaintiff was disabled based on the

application of Rule 201.12 of the Medical Vocational Guidelines ("Grids").   Plaintiff also

contends that the ALJ failed to resolve a conflict between the DOT and the vocational expert's

testimony.   The undersigned will discuss Plaintiff's claims in turn.

**1.**      **Grid Rule 201.12**

　　　　Plaintiff argues that the ALJ should have determined that Plaintiff was disabled under Grid

Rule 201.14.

　　　　If the ALJ holds at step four of the process that a claimant cannot return to past relevant

work, the burden shifts at step five to the Commissioner to establish that the claimant maintains the

RFC to perform a significant number of jobs within the national economy.    Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001).    The Commissioner may meet his burden by eliciting testimony from a vocational expert or "[i]f [a claimant's] impairments are exertional (affecting the ability to perform physical labor), the Commissioner may carry this burden by referring to the medical-vocational guidelines or 'grids,' which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment."    Holley v. Massanari, 253 F.3d 1088, 1093 (8th Cir. 2001).    "The Medical-Vocational Guidelines are a set of rules that direct whether the claimant is or is not disabled '[w]here the findings of fact made with respect to a particular individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule.'"    King v. Astrue, 564 F.3d 978, 980 (8th Cir. 2009) (quoting 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a)).    "[W]hen a claimant is limited by a nonexertional impairment, such as pain or mental incapacity, the Commissioner may not rely on the Guidelines and must instead present testimony from a vocational expert to support a determination of no disability."    Holley, 253 F.3d at 1093.

Grid Rule 201.14 provides that persons limited to sedentary work, who are closely approaching advanced age, ages 50-54, and who are high school graduates and have unskilled work experience, are presumptively disabled.    20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.12.

The ALJ made the following determination with regard to Plaintiff's RFC:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b) except that the claimant can lift ten pounds occasionally and five pounds frequently.    She can stand/walk for sixty minutes at a time for up to four hours in an eight-hour workday and sit for three hours at a time for up to five hours in an eight-hour workday.    She may occasionally handle, finger, and feel.    The claimant can occasionally climb, balance, stoop, kneel, crouch, and bend.    She should have no concentrated exposure to dust/fumes/gases, vibration, or cold temperatures below forty to forty-five degrees.

14

(Tr. 15.)   Plaintiff does not challenge the ALJ's RFC finding, and the undersigned find it is supported by substantial evidence.

The ALJ noted that, if Plaintiff had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by the Grids.   (Tr. 19.)   The ALJ stated that Plaintiff's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.   (Id.)   The ALJ indicated that she elicited testimony from a vocational expert to determine the extent to which these limitations erode the unskilled light occupational base.   (Id.)

Under the regulations, sedentary work is work that involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like files, ledgers, and small tools.   20 C.F.R. § 416.967(a).   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Id.   Jobs are sedentary if walking and standing are required occasionally.   Id.   "Occasionally" is defined as no more than two hours of an eight-hour workday.   See SSR 83-10.   Sedentary jobs require sitting a total of six hour of an eight-hour workday.   Id.

Light work is work that involves lifting no more than twenty pounds at a time, with frequent lifting of objects weighing up to ten pounds.   20 C.F.R. § 416.967(b).   Light work requires a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls.   Id.   The full range of light work requires standing or walking for a total of approximately six hours of an eight-hour workday.   See SSR 83-10.

Here, Plaintiff's RFC falls between light and sedentary work.   For example, Plaintiff's lifting limitations are consistent with sedentary work, while Plaintiff's standing and walking limitations are greater than the two-hour standing and walking limitations for sedentary work, but

less than the six-hour limitations for light work.   Similarly, Plaintiff's sitting limitation of three hours places her in the middle of the six hours of sitting required for sedentary work and the two hours required for light work.

Social Security Ruling 83-12 addresses situations where an individual's RFC falls between exertional ranges of work.   The ruling requires that vocational experts testify in all cases in which the individual's exertional residual functional capacity does not coincide with any of the Grid categories, and the "extent of the erosion of the occupational base is not clear.."   Id. Specifically, the Ruling states:

> In situations where the rules would direct different conclusions, and the individual's exertional limitations are 'somewhere in the middle' in terms of the regulatory criteria for exertional ranges of work more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability.   Accordingly, VS assistance is advisable or these types of cases.

Id.   The Ruling further provides that, if the individual's exertional capacity is "significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of 'disabled.'"   Id.

Plaintiff, relying on Strong v. Apfel, 122 F. Supp.2d 1025 (S.D. Ia. 2000), contends that the ALJ should have applied Rule 201.12 to find Plaintiff disabled, because Plaintiff's capacity for light work is significantly reduced.   In Strong, the ALJ found the claimant had the RFC to lift a maximum of fifteen pounds and to frequently lift five pounds; and required a sit/stand option.   122 F. Supp.2d at 1029.   The court noted that the RFC found by the ALJ was not the same as that presented to the vocational expert in the hypothetical question.   Id.   Instead, the hypothetical posed to the vocational expert assumed a maximum lifting limitation of fifteen to twenty pounds, and a frequent lifting limitation of ten pounds.   Id.   The court therefore found that the hypothetical was flawed and the testimony of the vocational expert was not substantial

evidence supporting the ALJ's decision.    Id.    The court further noted that the RFC found by the ALJ was neither light nor sedentary, but was more compatible with the lifting requirements of sedentary work.    Id. at 1030.    The court stated that, given the ALJ's RFC findings, the ALJ should have looked to Grid Rule 201.14 to direct a finding of disabled.    Id.

Defendant notes that, in Walker v. Apfel, 197 F.3d 956, 958 (8th Cir. 1999), the Eighth Circuit rejected the plaintiff's argument that the ALJ should have found her disabled based on the grids.    The Court held that the ALJ "properly called a VE to testify after determining that Walker's limitations fell between the sedentary and light ranges of work."    Id.

Plaintiff attempts to distinguish Walker, by noting that the court never specified what the plaintiff's RFC was, other than indicating that it fell between the sedentary and light levels. Plaintiff also argues that Walker did not involve the application of the portion of Social Security Ruling 83-12 that states if the "exertional capacity is significantly reduced in terms of the regulatory definition, it would indicate little more than the occupational base for the lower rule and could justify a finding of disabled."

Although the Eighth Circuit has not addressed the specific language in Ruling 83-12 upon which Plaintiff relies, other appellate courts discussing this language have rejected Plaintiff's argument and have held that an ALJ is entitled to rely on a vocational expert's testimony.    In Casey v. Barnhart, 76 Fed.Appx. 908, 911 (10th Cir. 2003), the plaintiff argued that the ALJ should have applied the grids to find him disabled when his exertional capacity fell between sedentary and light, and the vocational expert testified that the light work occupational base would be eroded by 98 percent.    The Tenth Circuit rejected Casey's argument, holding as follows:

> We disagree with Mr. Casey's contention that SSR 83-12 automatically requires a disability finding whenever the occupational base at the higher exertional level is

> significantly reduced.   It is true that the ruling would have supported a finding of disability here, because the eroded base "could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'"   SSR 83-12.   This language, however, is permissive and does not mandate such a finding.   The ALJ fulfilled his obligation to determine Mr. Casey's occupational base by consulting a VE to determine whether a person with claimant's profile could perform substantial gainful work in the economy.

76 Fed.Appx. at 911.   See also Moore v. Apfel, 216 F.3d 864, 870-71 (9th Cir. 2000) (holding that, when a claimant's exact place between the grids is difficult to determine, SSR 83-12 mandates the use of a vocational expert, not a finding of "disabled").

The undersigned finds that the ALJ properly elicited testimony from a vocational expert to determine the effect of Plaintiff's RFC on the occupational base.   Social Security Ruling 83-12 provides that, if the occupational base is significantly reduced, "it could indicate little more than the occupational base for the lower rule and *could* justify a finding of disabled." SSR 83-12 (emphasis added).   The plain language of SSR 83-12, therefore, reveals that the ruling is an attempt to provide guidance and does not require that an ALJ apply the Grids to find the claimant disabled.   Rather, the ruling requires the use of a vocational expert in such situations, which is the course taken by the ALJ in the instant matter.   This interpretation of SSR 83-12 is consistent with Eighth Circuit precedent, and is supported by other courts of appeals specifically addressing this issue.

Thus, the ALJ did not err in failing to apply grid Rule 201.14 to find Plaintiff disabled.

**2.      Vocational Expert Testimony**

Plaintiff next argues that remand is necessary because the ALJ failed to resolve a conflict between the DOT and the vocational expert's testimony.

The following exchange between the ALJ and the vocational expert at the administrative hearing elucidates the issue:

Q: [F]or my second hypothetical the same restrictions as the first hypothetical except handling, fingering and feeling are limited to occasional. Are those occupations, representative occupations you gave me available?

A: The ticket taker would not be but the arcade attendant and the parking lot attendant would still be at that level. And that's substantially reduce[sic] the occupational base. And just a note, the DOT was last written in 1991.
It did not deal with changes in these two particular jobs specifically. They have changed radically since that time. And they would be in line with an occasional handling, Your Honor.

(Tr. 60.)

An ALJ must inquire about any apparent conflicts between the DOT and a vocational expert's testimony. <u>See</u> Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *4. If there is indeed a conflict, the DOT controls unless the DOT classifications are rebutted. <u>See</u> <u>Jones v. Astrue</u>, 619 F.3d 963, 978 (8th Cir. 2010). In the instant case, the vocational expert addressed the discrepancy between his testimony and the DOT, without any prompting from the ALJ. He explained that the positions of arcade attendant and parking lot attendant have changed radically since the DOT was last revised in 1991. (Tr. 60.) He stated that the way the positions are performed currently would be consistent with occasional handling. (<u>Id.</u>) He had previously clarified that his testimony was based on his experience in placing individuals in the particular jobs he mentioned in the regional and national economy. (Tr. 59.)

The vocational expert's testimony rebutted the DOT's generic description of the occupations of arcade attendant and parking lot attendant. The DOT addresses only "occupations," broad categories representing numerous jobs. <u>See</u> SSR 00-4p, at *2. A claimant's "reliance on the DOT as a definitive authority on job requirements is misplaced," because "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than the range." <u>Wheeler v. Apfel</u>, 224 F.3d 891, 897 (8th Cir. 2000) (quoting <u>Hall v. Chater</u>, 109 F.3d 1255, 1259 (8th Cir. 1997)). "The

DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." Id.

The vocational expert testified that, based upon his placement of individuals in these occupations in the relevant area, Plaintiff could perform these positions. See SSR 00-4P, at *3 (explaining that an apparent conflict between the DOT and expert testimony may be reasonably explained by information about a particular job's requirements "from a VE's or VS's experience in job placement or career counseling"). Because the vocational expert provided a reasonable explanation for the apparent conflict, the ALJ was justified in relying on the expert's testimony. See Welsh v. Colvin, No. C12-0102, 2013 WL 3338419, at *18 (N.D. Iowa July 2, 2013) (finding that the expert's own observations of people at work constituted a reasonable explanation for inconsistencies between her testimony and the DOT, when the expert concluded that plaintiff could perform some specific jobs within broad categories of occupations). See also Lamke v. Astrue, No. 10-3386-CV-S-ODS, 2011 WL 2360175, at *2-3 (W.D. Mo. June 9, 2011) (holding that any inconsistency between the DOT and expert testimony was explained by the expert's observation of specific jobs within a broader occupation).

Plaintiff argues that the ALJ did not specifically state how he resolved the conflict in his written decision. Although the ALJ did not address this conflict in her decision, it is clear that the ALJ accepted the explanation the vocational expert had provided at the hearing. The ALJ stated "[b]ased on the testimony of the vocational expert," Plaintiff could perform other work existing in significant numbers in the national economy. (Tr. 20.) The conflict between the DOT and the expert's testimony had been resolved at the hearing. Thus, the ALJ did not err in electing to not provide further discussion regarding the conflict in her opinion. Cf. Hale v. Colvin, No. 4:13CV578(CEJ), 2014 WL 4206999, at *16 (E.D. Mo. Aug. 25, 2014) (remanding case when

vocational expert did not provide an explanation for the conflict and ALJ did not resolve the conflict in his opinion, noting SSR 00-4p requires that the ALJ must clarify the discrepancy in his opinion "[i]if the conflict is not resolved at the hearing") (citing <u>Cook v. Astrue</u>, No. 2:10-CV-05073-JPH, 2011 WL 3665334, * 9 (E.D. Wash. Aug. 22, 2011) (holding the ALJ did not err in relying on the testimony of the vocational expert without discussing the inconsistency between the vocational expert's testimony and the DOT in his opinion when the vocational expert explained at the hearing why her testimony conflicted with the DOT)).

Plaintiff also argues that the ALJ failed to address the conflict between the DOT and the vocational expert's testimony regarding the frequent reaching required for both of these positions, and the frequent fingering required for the parking lot attendant position.  Plaintiff's argument regarding the reaching requirements of these positions fails, as the ALJ did not include a reaching limitation in Plaintiff's RFC.

Plaintiff accurately notes that the position of parking lot attendant requires frequent fingering, whereas the vocational expert testified that a claimant who was limited to occasional fingering could perform this job.  <u>See</u> <u>Dictionary of Occupational Titles ("DOT")</u>, 915.473-010, 1991 WL 687865 (4th ed. Rev. 1991).  Defendant argues that remand is not necessary, because the ALJ did not rely solely on Plaintiff's ability to perform the parking lot attendant position when finding Plaintiff not disabled.

As Defendant points out, the ALJ also found Plaintiff was capable of performing the position of arcade attendant.  Consistent with the vocational expert's testimony, this position does not require fingering.  <u>See</u> <u>DOT</u>, 342.677-014, 1991 WL 672848.  Thus, substantial evidence on the record supports the ALJ's decision finding Plaintiff not disabled, because she is capable of performing another job existing in significant numbers in the national economy.

**Conclusion**

Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). This Court has found that substantial evidence supports the ALJ's decision denying Plaintiff benefits. Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of March, 2015.